

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3016 | **DATE** | 4/3/2002 |
| **CASE TITLE** | Brian Walls and Nadine Blake-Walls vs. Lombard Police Officers, *et al.* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Defendants' motion for summary judgment on all counts of plaintiffs' second amended complaint [doc. # 54-1] is granted. This case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | docketing deputy initials | |
| | Docketing to mail notices. | APR 04 2002 | | | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | 4/3/2002 | |
| JJK | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | | JJK mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

BRIAN WALLS and )
NADINE BLAKE-WALLS, )
                                   )
            Plaintiffs, )
                                   )     No. 99 C 3016
vs. )
                                     )     Magistrate Judge Schenkier
LOMBARD POLICE OFFICERS, *et al.*, )
                                     )
            Defendants. )

## <u>MEMORANDUM OPINION AND ORDER</u>

The defendants, the Lombard Police Officers and the Village of Lombard, have filed a motion for summary judgment on the remaining eleven counts of the second amended complaint filed by plaintiffs, Brian Walls and Nadine Blake-Walls.[1] The plaintiffs have failed to respond to defendants' motion, as required by the case law and local rule. Because the facts submitted are supported by the underlying factual materials from the discovery record, the Court deems them admitted. Based on these material and undisputed facts, the Court grants the defendants' motion for summary judgment (doc. # 54-1) against the plaintiffs on all remaining counts of the second amended complaint.

### I.

Summary judgment is used to obviate the need for a trial where there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). To be material, a fact must be outcome determinative under the substantive law governing the motion. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir.

---

[1] On May 12, 2000, the district court dismissed Count VIII, which alleged defamation under Illinois law (doc. # 28). On January 8, 2001, by consent of the parties (doc. ## 37, 38) and pursuant to 28 U.S.C. § 636(c)(1) and Northern District of Illinois Local Rule 73.1(b), the case was reassigned to this Court to preside over all proceedings and to enter final judgment (doc. # 39).

2000). A "genuine issue" exists when the party opposing the motion for summary judgment serves and files, pursuant to local Rule 56.1, a concise statement outlining the material facts that require denial of summary judgment, supported by citations to the evidentiary materials that support those denials (*e.g.,* affidavits, depositions, answers to interrogatories, admissions etc.). Fed. R.Civ.P. 56(c). Although the party seeking summary judgment bears the initial burden of proving that there is no genuine issue of material fact, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986), the non-moving party cannot rely upon the pleadings alone, but must use the evidentiary tools outlined above to identify the material facts that show there is a genuine issue for trial. *Id.* at 324; *Insolia,* 216 F.3d at 598. Pursuant to Local Rule 56.1(b)(3), "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." This local rule is consistent with the case law governing the disposition of summary judgment motions. *See generally Celotex,* 477 U.S. at 323; *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 255 (1986). In this case, there is no genuine dispute as to the facts submitted by defendants, but not only by operation of local rule. The Court also has reviewed the supporting materials submitted by the defendants, and concludes that those materials support the factual statements we set forth below.

## II.

We now turn to a brief summary of the undisputed facts that are material to the claims alleged by plaintiffs. As did the defendants in their summary judgment papers, we organize the facts as they relate to three separate incidents that took place on May 4, 1998: the "Roosevelt Road Incident"; the "Walls' Apartment Incident"; and the "Station Incident."

## A.

The Roosevelt Road Incident facts relate to plaintiffs' allegations in Count I (alleging a claim under 42 U.S.C. § 1983 for deprivation of rights under the first, fourth and fourteenth amendments to the United States Constitution) and Count II (alleging defamation under Illinois law and as a federal constitutional violation). On May 4, 1998, at approximately 3:50 p.m., five Lombard, Illinois police officers responded to a report of a domestic disturbance taking place in a vehicle on Roosevelt Road in the Village of Lombard (DSOF ¶ 5) in the parking lot of a "Hollywood Video" store (DSOF ¶ 23).[2] This report was made by Robert Vaughn, the witness (DSOF ¶ 14). The five officers who responded to the call were: Jay Jerome, William Marks, Michael Clark, Daniel Marciniak, and James Schrepferman (DSOF ¶ 4).

When they arrived on the scene, Officers Jerome and Marks observed plaintiff Nadine Walls sitting on the curb holding her infant son (DSOF ¶ 7). Mr. Walls was not present, and neither was the family car (DSOF ¶¶ 23-24). When questioned by Officers Marciniak and Clark as to whether she had been in an argument in the car in question, Ms. Walls was "largely unresponsive," but she admitted to having an argument with her husband (DSOF ¶ 9). Officer Marciniak then asked Ms. Walls if the argument between her and her husband, Brian Walls, had ever become physical; she responded that "it was her body and if she wanted to allow him to hit her, that was her prerogative" (DSOF ¶ 10).

About this time, Brian Walls drove into the Hollywood Video parking lot and stopped 50-100 feet from where Nadine Walls was sitting on the curb. At least one officer was standing by her (DSOF ¶ 24). Before Mr. Walls "got to his wife, an officer stopped to speak with him" (DSOF ¶

---

[2]Hereafter, "DSOF" refers to Defendants' Statement of Facts, submitted in accordance with Local Rule 56.1(b).

25). Mr. Walls was too far from his wife to hear any conversation the officers were having with her (DSOF ¶ 25). The officer began to question Mr. Walls, who said that his wife had experienced a "panic attack" in the car and had tried to grab the steering while he was driving. Mr. Walls denied that there had been a physical altercation; he admitted that there had been an altercation, but stated that it was verbal only (DSOF ¶¶ 13, 28).

Ms. Walls subsequently walked to the car where Mr. Walls was standing and the following exchange took place. An officer told Ms. Walls she did not have to go home with Mr. Walls, and they would give her a ride. Another officer said that "if he was Brian [Mr. Walls], he would not go home" and if "they [the police] got another call, it wouldn't be good for him" (DSOF ¶ 29-30). Mr. Walls decided to stay elsewhere that night (DSOF ¶ 31). Officer Marks then advised Mr. and Mrs. Walls about remedies to try if arguments between them became heated (DSOF ¶ 32-33). No Lombard officer ever ordered the Walls to remain apart; in fact, the officers allowed Mr. and Mrs. Walls to leave the scene together with their infant son (DSOF ¶ 35). Neither Mr. nor Mrs. Walls were arrested, or charged with any crime (DSOF ¶ 36).

Lombard Police Department Policy No. 310-11, effective April 8, 1996, requires officers to "[i]mmediately contact[] the Victim Advocacy Service for victim assistance following a domestic violence related incident" (DSOF ¶ 37). Pursuant to department policy, Officer Jerome contacted the Victim Advocacy Service and informed the individual taking the call of the incident. The plaintiffs were not present when this call was made (DSOF ¶ 38). Officer Jerome reported nothing more than what was contained in his police report (DSOF ¶ 39). The report makes no reference to abuse of any kind. The report indicates only that a witness reported seeing a non-physical argument

4

in a vehicle, and states that both of the plaintiffs denied that any physical altercation occurred (DSOF ¶ 40).

## B.

The undisputed facts related to the Walls's Apartment Incident are material to the plaintiffs' claims in Count III (Battery); Count IV (a Section 1983 claim alleging an unlawful search and seizure in violation of the fourth and fourteenth amendments to the United States Constitution); Count V (false imprisonment under state and federal law); Count VI (conspiracy to deprive plaintiffs of their rights under the fourth and fourteenth amendments to be free from unlawful search and seizure, and to be accorded due process); Count VII (assault); and Count XII (defamation).

On May 4, 1998, at approximately 7:30 p.m., Lombard officers Jay Jerome, William Marks, Daniel Soutar (who is not a defendant) and Lt. Scott Watkins responded to a 911 call reporting a domestic disturbance at an apartment building at 410 Crescent Blvd., Lombard, Illinois (DSOF ¶ 45). Brian and Nadine Walls resided in that apartment building (DSOF ¶¶ 48, 56). When the officers arrived on the scene, a resident of the building advised them that "the screaming, crying and what sounded like slapping noises he heard that prompted his call could be coming from apartment 3D, the Walls' apartment, but he was not sure" (DSOF ¶ 46). Another resident told Officer Marks: "It's pretty bad today," and pointed to the Walls's apartment (DSOF ¶ 47).

When the officers knocked on the door, Nadine Walls answered (DSOF ¶¶ 48-49). Officers Jerome and Marks noticed a red mark near Ms. Walls's eye that they had not seen when she met with them in the Hollywood Video lot a few hours earlier (DSOF ¶ 49). Based on the facts known to

them at the time, the officers believed Ms. Walls had been in a domestic disturbance with someone in her apartment and that her child might be in danger (DSOF ¶ 53).[3]

At that point, one officer said he was coming in and pushed the door open, even though he did not have a warrant (DSOF ¶ 56). Ms. Walls testified in her deposition that the door had to be forced open because there was new carpeting in the apartment and, as a result, "the door would only open so wide without having to really be forced" (DSOF ¶ 57). The officers looked around the apartment, and finding no one else at home, they left (DSOF ¶ 59). They were in the apartment for approximately five minutes (DSOF ¶ 60). At no time after entering the apartment did the officers touch, strike, or have any contact with Ms. Walls (DSOF ¶ 62). As the officers left the building, several residents advised the officers that they had heard yelling and screaming coming from the Walls's apartment at all different times of the day and night (DSOF ¶ 67). Officer Jerome contacted the Victims Advocacy Service and informed the agency of the incident. Officer Jerome related nothing more than what was contained in the police report (DSOF ¶ 68). Following department procedure, Officer Jerome also notified the Department of Children and Family Services ("DCFS") of the incident, due to concern for the safety of the Walls's infant son (DSOF ¶ 69).

Ms. Walls admitted in her deposition to drinking one glass of wine before the police arrived and one after they left the apartment. She also admitted that once the officers were inside her apartment, "no one held her or prevented her from moving about the apartment" (DSOF ¶ 58). Ms.

---

[3]There is some disagreement about certain aspects of the conversation between Ms. Walls and the officers. Ms. Walls testified that when asked about the mark on her eye, she told the officers that her son had scratched her earlier; that her husband was not home; and that there was no disturbance in her apartment. On the other hand, the officers say that when asked if she was all right and how she received the mark, Ms. Walls refused to answer, "saying only that it was none of the officers' business" (DSOF ¶ 50). When the officers asked if Mr. Walls was home, Ms. Walls again refused to answer, saying again that it was none of their business (DSOF ¶ 51). This disagreement is not material to the outcome of the case. *See* pp. 13-14, *infra*.

Walls also admitted that when she requested the officers' names, they came back into the apartment and Lt. Watkins wrote down their names on an envelope for her (DSOF ¶ 61, 66). She testified that the officers told her that they were acting out of concern for her well being (DSOF ¶ 61).

### C.

Finally, the following undisputed facts are material to the Station Incident, which relates to Count IX (a Section 1983 claim alleging deprivation of rights under the fourth and fourteenth amendments for false arrest and imprisonment); Count X (alleging a conspiracy to deprive rights under the fourth and fourteenth amendments for false arrest and imprisonment); and Count XI (alleging malicious prosecution).

On May 4, 1998, Sgt. Rick Montalto was the officer in charge at the Lombard police station (DSOF ¶ 78). At approximately 11:00 p.m., Ms. Walls came to the station with her aunt and uncle, William and Barbara Brown, and her infant son (DSOF ¶ 79). Ms. Walls told Sgt. Montalto that she wanted to file a complaint about Lt. Watkins and the other officers who had entered her apartment without a warrant earlier in the evening. Sgt. Montalto told Ms. Walls that he would take her complaint and forward it to the Deputy Chief of Police when he came in to work in the morning (DSOF ¶ 81).

As he took the complaint, Ms. Walls was loud, argumentative and demanding, screaming and interrupting Sgt. Montalto's conversation with her (DSOF ¶ 83). Sgt. Montalto suggested that Ms. Walls return in the morning, because he believed she was intoxicated (DSOF ¶ 82-83). When Ms. Walls refused to leave the station and continued to cause a disturbance in the lobby, Sgt. Montalto told her that if she did not leave the station or quiet down, he would place her under arrest for trespass (DSOF ¶ 84-85). He warned of her arrest several times (DSOF ¶ 85). Ms. Walls refused

7

to quiet down, and instead told Sgt. Montalto: "Don't threaten me with an arrest, do it" – sticking out her wrists as she did so (DSOF ¶ 86). Sgt. Montalto then placed her under arrest for criminal trespass to real property pursuant to 720 ILCS 5/21-3(a) (DSOF ¶ 87). Officers Virene and Latronica booked and processed Ms. Walls pursuant to Sgt. Montalto's instruction (DSOF ¶ 88).

Ms. Walls admits that she was told that she would be arrested for trespass if she did not leave the station (DSOF ¶ 89). She also admits that she refused to leave and return in the morning to complete her written complaint (DSOF ¶ 90). Ms. Walls denies that she told any officer that she was taking prescribed medication on the day of her arrest, or that she had any prescribed medications with her when she came to the station (DSOF ¶ 91-92). She admits that after her arrest she asked her uncle to go to her apartment and retrieve some medication (Diazepam) for her (DSOF ¶ 93), but at no time did she tell a police officer that she needed to take any medication (DSOF ¶ 94).

On June 30, 1999, a jury trial commenced against Ms. Wall on the charge of criminal trespass to real property (DSOF ¶ 95). On July 1, 1999, the court determined that the jury was "hung" (DSOF ¶ 96). On July 2, 1999, a mistrial was declared when the jury could not reach a verdict (DSOF ¶ 97). On July 30, 1999, the charge against Ms. Walls was *nolle prossed* (DSOF ¶ 98) – that is, the State decided not to prosecute.

## III.

The law governing the substantive claims made by the plaintiffs in their second amended complaint makes it clear that the material and undisputed facts submitted by the defendants support the entry of summary judgment. We will address the claims in the context of the three factual scenarios outlined above: the Roosevelt Road Incident; the Walls's Apartment Incident; and the Station Incident.

8

## A.

Counts I and II relate to the Roosevelt Road Incident. Count I is a claim arising under 42 U.S.C. § 1983, alleging deprivation of rights under the first, fourth and fourteenth amendments (Second Am. Compl., ¶¶ 17-33). Count II alleges a constitutional violation based on alleged defamation (*Id.* at ¶¶ 34-40). We address each claim *seriatim*.

### 1.

The Section 1983 claim in Count I alleges that plaintiffs were denied freedom of association among their family members when the Lombard police officers questioned them regarding the report of domestic disturbance in their car in the Hollywood Video store parking lot. The right to be free from undue interference by the State with family relationships, such as marriage and the parent-child relationship, is protected by both the first and fourteenth amendments. *See Roberts v. United States Jaycees,* 468 U.S. 609, 618 (1984) (first amendment protects individual right to intimate human relationships); *Hameetman v. City of Chicago,* 776 F.2d 636, 643 (7th Cir. 1985) ("[a] state or city that forces a man to live apart from his family deprives him of a form of liberty protected by the due process clause, and therefore violates the Fourteenth Amendment if due process is denied"). The test for determining whether there has been "undue interference," and thus an unconstitutional deprivation of the right to family association, is whether state or local regulations "regulate the family directly." *Hameetman,* 776 F.2d at 643. "The collateral consequences of regulations not directed at the family, . . . , do not bring the constitutional rights of family association into play." *Id.*

Here, the Walls's family and/or intimate "association" was not directly interfered with by regulation or in any other way that violates the first or fourteenth amendments. The brief separation

for questioning certainly is not a constitutional violation. Nor did the officers violate the Walls's rights by warning them to spend the night in different places, so as to avoid further arguments that could lead to the officers being called again, which the officers told Mr. Walls would not be good for him. The officers were acting in a manner consistent with the legitimate governmental interest expressed by domestic violence laws. Defendants' point that "[t]he Domestic Violence Act required that the incident be investigated by the police [because] liability could potentially have been imposed if they did *not* investigate the incident" (Defs.' Mem. at 5) is well taken. These laws do not seek to prevent desired familial association, but rather seek to prevent unwarranted or illegal associations in the form of violent activity. Any alleged interference by the defendants with the Walls's association was brief and minimal, and appropriate and equal to the circumstances presented. The Court finds that there was no first or fourteenth amendment violation of the right to family association. To hold otherwise would mean that every separation order in a domestic violence case (or the less drastic action by the officers here) would carry the seed of a constitutional claim, and thus would improperly open "[b]reathtaking vistas of liability." *Hameetman*, 776 F.2d at 643.

There is also no viable fourth amendment claim under Count I. "[E]ven unreasonable, unjustified, or outrageous conduct by an officer is not prohibited by the Fourth Amendment if it does not involve a seizure (or a search)." *See Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir. 1992). *See also Kernats v. O'Sullivan*, 35 F.3d 1171, 1177 (7th Cir. 1994). Here, the undisputed facts show that plaintiffs were not searched, seized or subjected to a custodial interrogation. Thus, even assuming *arguendo* that defendants engaged in improper conduct, there would be no remedy under the fourth amendment.

The Court therefore finds that there was no violation of the first, fourth or fourteenth amendment by the Lombard police officers with regard to the Roosevelt Road Incident and summary judgment will be entered in favor of defendants on Count I.

**2.**

In Count II, plaintiffs assert a Section 1983 claim for constitutional defamation based on the fourteenth amendment. However, mere defamation is not actionable under the Constitution. *See Hedrich v. Bd. of Regents of the University of Wisconsin System,* 274 F.3d 1174, 1184 (7th Cir. 2001) (citing *Paul v. Davis,* 424 U.S. 693, 701 (1976) (same)). In order to "cross the line from mere defamation" to a constitutional violation, a plaintiff must offer facts to show that the defendant's conduct and/or statements were "so stigmatizing" that they constitute "infringement of a liberty interest." *Hedrich,* 274 F.3d at 1184.

Here, plaintiffs offer no facts that could establish a defamatory statement by the Lombard police officers, let alone evidence of a defamatory statement that rises to the level of infringement upon a liberty or property interest. Although plaintiffs allege that the defendants made false reports to Victim Advocacy Service that Nadine Walls had been abused by Brian Walls, the undisputed facts show otherwise. Officer Jerome merely told Victim Advocacy Service that there had been a report of an argument, and that Mr. and Mrs. Walls denied any physical altercation: there was no report of abuse. Thus, the Court will enter summary judgment for defendants on Count II.

**B.**

The claims related to the Walls's Apartment Incident include Counts III-VI and XII. We will address each of those claims in turn.

11

## 1.

In Count III, the plaintiffs allege a state law claim of battery, which is governed by Illinois law and is before this Court under supplemental jurisdiction, 28 U.S.C. § 1367 (2001). In Illinois, the tort of battery is defined as "the willful touching of another by the aggressor or a substance or force put in motion by the aggressor." *Glowacki v. Moldtronics, Inc.,* 636 N.E.2d 1138, 1140 (Ill. App. 2d Dist. 1994). The elements of a battery thus include an intentional or willful act by the defendant which results in "offensive contact with the plaintiff's person." *McNeil v. Carter,* 742 N.E.2d 1277, 1281 (Ill. App. 3d Dist. 2001). "To be liable for battery, the defendant must have done some affirmative act intended to cause an unpermitted contact. Where the party inflicting the injury is not doing an unlawful act, the intent to harm is material." *Glowacki,* 636 N.E.2d at 1140.

Here, the admitted and undisputed facts establish that there was no battery because there was (1) no intentional touching; (2) no intent to harm; and (3) no unlawful act. With regard to intentional touching and intent to harm, there is no evidence that any of the defendants intended any contact with the plaintiff when they pushed open the door to her apartment. In fact, Ms. Walls's own deposition testimony demonstrates that no more than accidental physical contact occurred between the officers and Ms. Wall. The apartment door could not be opened without some force due to the thickness of new carpeting, and as the door was opened, it made contact with Ms. Walls. There are no facts offered to show that this contact was intentional. And, Ms. Walls admits that, once inside, the officers had no physical contact with her. Nor is there any evidence that there was an intent to harm Ms. Walls. There is no evidence that the door struck her in a forceful manner or caused her any injury.

With regard to an unlawful act, there was none. Although the entry was warrantless, the admitted and undisputed facts establish that the officers had reason to believe that there might be a domestic disturbance with someone inside the apartment. The officers received reports from neighbors that screaming and slapping sounds were coming from the Walls's apartment; and the neighbors reported that they thought it was "pretty bad" in the Walls's apartment that day. The officers also saw a fresh red mark near Ms. Walls's eye that had not been there when the officers had seen Ms. Walls earlier that day. Moreover, the officers knew that Ms. Walls had an infant son who was probably inside the apartment.

Based on these objective facts, the warrantless entry was justified based on exigent circumstances and therefore not unlawful. A warrantless entry and search may be conducted when the police "reasonably believe a person within is in need of immediate aid." *Mincey v. Arizona*, 437 U.C. 385, 392 (1978); *United States v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000) ("This court has found that exigent circumstances justified a warrantless search where police reasonably feared for the safety of someone inside the premises"). The "reasonable belief" standard is an objective one, which requires evidence showing that "the circumstances as they appeared at the commencement of entry would lead a reasonable, experienced law enforcement officer to believe that someone inside the house, apartment, or hotel room required immediate assistance." *Richardson*, 208 F.3d at 629, (quoting *United States v. Arch*, 7 F.3d 1300, 1303-5 (7th Cir. 1993)).

The circumstances here – the reports of neighbors, the presence of a fresh mark near Ms. Walls's eye, and the likely presence of a child inside – gave the defendant officers the necessary reasonable belief. That is true whether we accept the officers' statements that Ms. Walls refused to disclose how she got the mark on her face or the whereabouts of her husband, or Ms. Walls's

deposition testimony that she said her child scratched her face and that her husband was not home. The fact that Ms. Walls denied any domestic disturbance and indicated she was in no danger does not alter this analysis, since "exigent circumstances do not end merely because the victim indicates that she is no longer in danger. That is a determination for the officer to make independently in light of the totality of the circumstances." *Magnusson v. Cassarella,* 813 F. Supp. 1321, 1324 (N.D. Ill. 1992).

"The efficient and effective use of the emergency responsive networks requires that the police . . . be able to respond to such calls quickly and without unnecessary second-guessing," *Richardson,* 208 F.3d at 630 – a consideration that takes an even heightened importance where a child's potential safety is involved. *See also Tierney v. Davidson,* 133 F.3d 189, 197 (2d Cir. 1998) (courts recognize combustible nature of domestic disputes and accord great latitude to officer's belief that warrantless entry justified by exigent circumstances). Thus, the Court grants summary judgment in favor of the defendants on Count III.

## 2.

Count IV asserts a Section 1983 claim for unlawful search and seizure in violation of the fourth and fourteenth amendments. The undisputed material facts again demonstrate that there was no such violation here (Second Am. Compl., ¶¶ 54-63). As explained above, a warrantless entry is justified where there are exigent circumstances indicating that persons inside a dwelling may need immediate assistance. *Richardson,* 208 F.3d at 630. So, too, is a warrantless search. *Id.* at 629.

For the reasons explained above, there were exigent circumstances here that justified the entry. And, the brief search conducted after entry was limited to determining if Mr. Walls was present – which was the specific concern that gave rise to the reasonable fear for the safety of

14

someone inside the apartment. Thus, the Court grants the defendants' motion for summary judgment as to Count IV.

### 3.

In Count V, the plaintiffs allege violations of false imprisonment under state law and deprivations of "personal liberty," presumably under federal law – although the second amended complaint does not specifically call out the basis for this allegation (Second Am. Compl., ¶¶ 64-71). The plaintiff's lack of specificity, however, is of no moment, since the allegations in Count V are without merit based on the admitted and undisputed facts material to this claim.

To state a claim for false imprisonment under Illinois law, a plaintiff must establish an unreasonable restraint of liberty, against her will, caused by the defendant. *See Meerbrey v. Marshall Field and Co., Inc.,* 564 N.E.2d 1222, 1231 (Ill. S. Ct. 1990). Here, there are no facts indicating, let alone establishing, that Ms. Walls was restrained, against her will or otherwise, by the defendants. To the contrary, Ms. Walls testified that no one held her or prevented her from moving about her apartment. Indeed, after the officers left the apartment, Ms. Walls asked them to return so that they could provide her with their names.

Similarly, "the Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished 'without due process of law.'" *Baker v. McCollan,* 443 U.S. 137, 145 (1979). There are no facts indicating or establishing a deprivation of liberty. The Court therefore enters summary judgment on Count V in favor of the defendants.

### 4.

In Count VI, the plaintiffs allege a conspiracy to deprive them of their constitutional rights in violation of Section 1983 (Second Am. Compl., ¶¶ 72-84). To establish a claim of civil

15

conspiracy, the plaintiff must show "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damage.'" *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979), *reversed in part on other grounds*, 446 U.S. 754 (1980). To state a claim for relief under a civil rights statute, the plaintiff must allege and prove both a conspiracy and an actual deprivation of rights; mere proof of a conspiracy is insufficient to establish a claim. *See House v. Belford*, 956 F.2d 711, 721 (7th Cir. 1992).

There is no evidence of an agreement among the defendants to deprive the plaintiffs of a constitutional right. Moreover, since the warrantless entry and search were justified for the reasons explained above, these acts cannot operate as a basis upon which to claim conspiracy to deprive plaintiffs' of a constitutional right. In other words, where there is a determination, as here, that there is no constitutional injury, then relief based on a conspiracy claim is foreclosed. *See Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). Thus, summary judgment is appropriate and will be granted on Count VI.

## 5.

In Count VII, plaintiffs seek a remedy for the deprivation of unspecified rights and privileges secured to her by the United States Constitution, federal law, the Illinois State Constitution and Illinois law. Although plaintiffs' theory is not alleged specifically, Ms. Walls claims that she was "willfully, maliciously, seized [and] threaten[ed]" (Second Am. Compl., ¶ 86). She also alleges that she knew the defendants were "capable of carrying out their threats and verbal abuse" and she feared for her safety (*Id.* at ¶ 88).

To the extent the plaintiffs here assert a federal claim, it fails for the reasons we have stated above. To the extent that plaintiffs mean to allege a state law claim for common law assault, the plaintiffs must show that Ms. Walls had a reasonable apprehension of imminent battery at the time the officers entered her apartment. *McNeill v. Carter,* 742 N.E.2d 1277, 1281 (Ill. App. 3d Dist. 2001). The admitted, undisputed evidence indicates just the contrary. Ms. Walls's own deposition testimony indicates that no officer threatened or verbally abused her, and no one touched her or threatened to do so. Moreover, the fact that Ms. Walls asked the officers to re-enter her apartment so that they could write their names down for her demonstrates that, while she may have been upset by their sudden entry, she had no fear of an imminent battery. Thus, the Court grants summary judgment for the defendants on Count VII.

### 6.

In Count XII, the plaintiffs allege that unnamed officers reported to the DCFS that Ms. Walls was abused by Mr. Walls (Second Am. Compl., ¶ 139). The plaintiffs allege that such a statement was false and defamatory, causing them emotional, mental and reputational injury (*Id.* at ¶ 144-45).

The allegations in Count XII are without merit because the admitted and undisputed evidence indicates that no defamatory or false statement was made to DCFS. Although the defendants admit that a report was made to DCFS, there is no evidence that the report made was based on anything other than the officers' own police report, which in turn was based on their own observations and the testimony of neighbors who had heard yelling and screaming coming from the Walls's apartment. These facts do not establish that the defendants reported "abuse" or other physical assault, and there are no facts establishing that any false statements were made. Based on these facts, the Court will grant summary judgment in favor of the defendants on Count XII.

17

## C.

The Station Incident facts are material to Counts IX, X and XI. We will address these claims in turn.

## 1.

In Count IX, the plaintiffs allege a Section 1983 claim for deprivation of rights under the fourth and fourteenth amendments based on false arrest and imprisonment (Second Am. Compl., ¶¶ 103-117). The plaintiffs claim generally that Ms. Walls's arrest at the station on May 4, 1998, was without probable cause (*Id.* at ¶¶ 110-11).

As indicated above, the essential elements of a cause of action for false arrest and false imprisonment are that plaintiff was restrained or arrested by defendant, against her will, and that the defendant acted without having reasonable grounds to believe that an offense was committed by plaintiff. *Meerbrey,* 564 N.E.2d at 1231. Putting aside the admitted fact that Ms. Wall told Sgt. Montalto: "don't threaten me with arrest, just do it," the undisputed facts show that there were reasonable grounds for the arrest. Ms. Walls, who appeared to be intoxicated, refused to leave the police station after repeated warnings to quiet down and/or to leave until she could quiet down. *Cf. People v. DeRossett,* 604 N.E.2d 500 (Ill. App. 4th Dist. 1992) (court held that person could be arrested for criminal trespass for causing a disturbance in the police station lobby, even after lawful entry, after being repeatedly told to leave). The fact that this charge did not ultimately result in a conviction does not require a different conclusion: the failure to meet the burden of proof at trial (proof beyond a reasonable doubt) does not mean that the lesser burden for making the arrest (reasonable grounds) was not met. *People v. Fortney*, 697 N.E.2d 1, 7 (Ill. App. 2d Dist. 1998) ("To determine whether reasonable grounds/probable cause existed, the trial court must determine whether

a reasonable and prudent person, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense"). The Court therefore grants summary judgment on Count IX in favor of the defendants.

## 2.

In Count X, the plaintiffs allege a conspiracy to deprive them of their fourth and fourteenth amendment rights by false arrest and imprisonment (Second Am. Compl., ¶¶ 118-28). As outlined above, to allege conspiracy, the plaintiffs must allege an agreement or plan of some kind "to commit an unlawful act, or to commit a lawful act by unlawful means . . . ." *Hampton,* 600 F.2d at 621. Here, for the reasons stated above, the arrest was not unlawful. Moreover, none of the undisputed facts suggest such an agreement regarding Ms. Walls's arrest at the station. The facts show that Sgt. Montalto made the decision to arrest Ms. Walls; there is no evidence that others consulted, much less conspired, with him to make the decision. The Court therefore enters summary judgment for defendants on Count X.

## 3.

In Count XI, the plaintiffs allege a violation of unspecified provisions of the "Constitution and laws of the United States and Constitution and laws of the State of Illinois" (Second Am. Compl., ¶ 137). However, since the allegations in Count XI relate to the charges against Ms. Walls for criminal trespass and the alleged falsity of those charges, the Court concurs in the defendants' assessment of Count XI as a claim for malicious prosecution (Defs.' Mem. at 19).

The Seventh Circuit has recently held that "[t]he existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution." *Newsome v. McCabe,* 256 F.3d 747, 750 (7th Cir. 2001). Illinois law recognizes the tort of malicious prosecution. Thus, any theory of

federal malicious prosecution must fail, and we will address Count XI insofar as it asserts a state law claim for malicious prosecution.

To establish a cause of action for malicious prosecution and Illinois law, the plaintiff must prove each of the following elements: the commencement or continuance of an original civil or criminal judicial proceeding by the defendant; termination of the proceeding in the plaintiff's favor; the absence of probable cause; the presence of malice; and damages. The failure to prove any one element defeats the plaintiff's cause of action. *Swick v. Liautaud,* 662 N.E.2d 1238, 1242 (Ill. S. Ct. 1996). *See also Miller, D.D.S. v. Rosenberg*, 749 N.E.2d 946, 952 (Ill. S. Ct. 2001) (same).

"Probable cause has been defined in a malicious prosecution case . . . as a state of facts that would lead a person of ordinary caution and prudence to believe, or to entertain an honest and strong suspicion, that the person arrested committed the offense charged." *Rogers v. Peoples Gas, Light & Coke Co.*, 733 N.E.2d 835, 841 (Ill. App. 1st Dist. 2000). Thus, in establishing the absence of probable cause, "[i]t is the state of mind of the one commencing the prosecution, and not the actual facts of the case or the guilt or innocence of the accused, which is at issue." *Id.* "Lack of probable cause does not itself establish malice, but the trier of fact may infer malice from lack of probable cause . . ." *Id.* Malice "is proved by showing that the prosecutor was actuated by improper motives." *Id.*

For the reasons outlined above, Ms. Walls's admitted conduct inside the police station established probable cause for her arrest. There are no facts that would support a finding of improper motive, and thus, malice. Accordingly, the Court grants summary judgment in the defendants' favor as to Count XI.

## CONCLUSION

IT IS THEREFORE ORDERED that the defendants motion for summary judgment on all counts of plaintiffs' second amended complaint (doc. # 54-1) is granted.[4] This case is terminated.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: April 3, 2002

---

[4]Because the Court has granted defendants summary judgment on the merits, the Court does not address defendants' alternative arguments based on federal qualified immunity, the Illinois Tort Immunity Act, 745 ILCS 10/1-101, *et seq.*, or the Domestic Violence Act, 750 ILCS 60/304(a).